UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-71-TBR-LLK

THERESSA JOHNSON and
DEBORAH JOHNSON                                              PLAINTIFFS

v.

PENNYRILE ALLIED
COMMUNITY SERVICES *et al*.                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions: Plaintiffs Theressa Johnson and Deborah Johnson's Motion for Entry of Default Judgment against Defendant Cabinet for Health and Family Services ("CHFS"), [DN 12]; and Defendant Cabinet for Health and Family Services' Motion to Dismiss for Failure to State a Claim or alternatively, Motion to Dismiss for Lack of Jurisdiction, and response to Plaintiffs' Motion for Default Judgment, [DN 15]. Plaintiffs responded to Defendants' Motion, [DN 21], and Defendant replied, [DN 23]. This matter is now ripe for adjudication. For the reasons stated herein, Plaintiffs' Motion for Entry of Default Judgment against Defendant CHFS, [DN 12], is **DENIED**; and Defendant CHFS's Motion to Dismiss, [DN 15], is **GRANTED**.

## BACKGROUND

Plaintiffs Theressa Johnson and Deborah Johnson are African American women over the age of forty (40). [DN 1 at 4]. Both Theressa and Deborah hold Master's Degrees in the field of social services. *Id.* Theressa Johnson was a full-time employee at Defendant Pennyrile Allied Community Services ("PACS") from December 1, 2009 to March 26, 2019 and again from April 8, 2019 to August 19, 2019. *Id.* Theressa worked as a Family Preservation Specialist and was

eventually promoted to Diversion Supervisor for the Family Preservation Program. *Id.* Deborah Johnson was a full-time employee at Defendant PACS from June 15, 2019 to October 31, 2019. Deborah worked as a Family Preservation Specialist for the Family Preservation Program. *Id.* In their complaint, Plaintiffs state that they were "targets of abuse, including false accusations, harassment and multiple adverse employment actions because of their race and age." *Id.* at 2. Plaintiffs further state that despite being overly qualified for their respective positions and maintaining clean employment records, both women were ultimately terminated and replaced by younger, less qualified white employees who received higher salaries than Plaintiffs. *Id.*

CHFS, pursuant to its statutory duties, entered into a contract with PACS, whereby PACS provides family preservation and reunification services to Kentucky citizens and receives federal grant money in exchange. [DN 15 at 75; DN 15-1 (Excerpts from Contract, Section 2.0)]. Defendant CHFS's Department for Community Based Services ("DCBS") monitors PACS to ensure it complies with state regulations and contractual obligations—which includes ensuring that individuals who perform services possess minimum qualifications and requirements for the work performed and approving employment actions by PACS. [DN 15 at 75; DN 15-1; DN 1 at 3]. As such, Plaintiffs contend that because "CHFS's DCBS approved all of the employment actions by PACS, CHFS is liable for the actions of PACS through vicarious or imputed liability, cat's paw theory, and Respondeat Superior." [DN 1 at 3].

Theressa Johnson filed an EEOC charge of discrimination against PACS on January 14, 2020. [DN 15-2]. The EEOC issued Theressa a Notice of Right to Sue on January 28, 2020. [DN 1 at 5]. Deborah Johnson filed an EEOC charge of discrimination against PACS on February 24, 2020. [DN 15-3]. The EEOC issued Deborah a Notice of Right to Sue on March 11, 2020. [DN 1 at 5]. Subsequently, on April 27, 2020, Plaintiffs filed a Complaint against Defendants Pennyrile

Allied Community Services ("PACS"), Roy Brunner, Cabinet for Health and Family Services ("CHFS"), and Doe(s) 1–50 individually and in their official capacities. [DN 1].

The Complaint lists eleven (11) causes of action, nine (9) of which are against CHFS. Those nine causes of action are Count I discrimination, retaliation, harassment, and wrongful termination pursuant to 42 U.S.C. § 1981; Count II racial discrimination pursuant to KRS 344.050; Count III age discrimination pursuant to KRS 344.050; Count IV retaliation pursuant to KRS 344.050; Count VI common law negligent infliction of emotional distress; Count VII common law intentional infliction of emotional distress; Count VIII common law negligent hiring retention and supervision; Count IX common law wrongful termination in violation of public policy; and Count XI racial discrimination pursuant to Title VII. [DN 1]. Plaintiffs seek compensatory damages based on lost wages and pain and suffering from CHFS under federal statutes, Kentucky statues, and common law tort. *Id.* at 2.

On September 22, 2020, Plaintiffs filed an Application for Entry of Default Judgment against Defendant CHFS. [DN 12]. Subsequently, on October 12, 2020, Defendant CHFS filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (4), (5), and (6) and 4(m). [DN 15].

In its Motion to Dismiss, Defendant CHFS contends that Plaintiffs' 42 U.S.C. § 1981 claims, KRS Chapter 344 claims, and common law claims against CHFS must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity. [DN 15 at 68]. CHFS states that Plaintiffs' Title VII claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted based on Plaintiffs' failure to exhaust administrative remedies and enlarging its Title VII charge beyond its EEOC Complaint. [*Id.* at 68, 74]. Additionally, CHFS asserts that Plaintiffs' claims against it

should dismissed pursuant to Rule 12(b)(2), (4), and (5) and Rule 4(m), for insufficient process, insufficient service of process, lack of personal jurisdiction due to process deficiency, and for failure to serve within 90 days. [*Id.* at 80]. Lastly, CHFS asserts that because Plaintiffs failed to properly serve CHFS in this matter the Court should direct the clerk to not enter a default judgment against it. [*Id.*]

## LEGAL STANDARD

### A.

The standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) differ in the Sixth Circuit. *Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 722–23 (W.D. Ky. 2015) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See id.* (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). In most circumstances, a plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *Id.*

A motion to dismiss based on a state's immunity under the Eleventh Amendment is essentially a motion to dismiss for "lack of subject-matter jurisdiction." *In re Foss Mar. Co.*, No. 5:12-CV-00121, 2013 WL 4096296, at *2 (W.D. Ky. Aug. 13, 2013) (citing *Angel v. Kentucky*, 314 F.3d 262, 265 (6th Cir. 2002) ("[S]tate immunity is jurisdictional in the same sense as the complete diversity requirement or the well-pleaded complaint rule. . . .[A] federal court must examine each claim in a case to see if the court's jurisdiction is barred by the Eleventh Amendment")); *see also* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the

evidence and the plaintiff bears the burden of proving that jurisdiction exists." *In re Foss Mar. Co.*, 2013 WL 4096296, at *2 (quoting *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* (quoting *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir.2007)). The defense of sovereign immunity raises a facial challenge to the Court's subject-matter jurisdiction. *Kentucky Mist Moonshine, Inc. v. Univ. of Kentucky*, 192 F. Supp. 3d 772, 780 (E.D. Ky. 2016) (citing *Sims v. Univ. of Cincinnati*, 46 F.Supp.2d 736, 737 (S.D. Ohio 1999), *aff'd* 219 F.3d 559 (6th Cir. 2000)). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Here, Defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on sovereign immunity grounds. Sovereign immunity may serve as a basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of jurisdiction. *Muniz–Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "'[W]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power,' the defense 'is not coextensive with the limitations on judicial power in Article III.'" *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir.2006) (citing *Calderon v. Ashmus*, 523 U.S. 740, 745 n. 2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998)). "[U]nlike subject-matter jurisdiction, 'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'" *Id.* (citation omitted); *see also Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 722–23 (W.D. Ky. 2015).

## B.

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts analyzing challenges under Fed. R. Civ. P. 12(b)(6) "must construe the complaint in the light most favorable to plaintiff [ ]. . ." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough factual matter to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B*., 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679.

## DISCUSSION

### A. Eleventh Amendment Sovereign Immunity

Defendant first moves to dismiss Plaintiffs' 42 U.S.C § 1981 claims, KRS Chapter 344 claims, and common law claims against CHFS for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on sovereign immunity grounds. [DN 15]. "Where a State raises sovereign immunity as a jurisdictional defect, it 'must be decided before the merits.'" *Fleet v. Commonwealth of Kentucky Cabinet for Health & Fam. Servs*., No. 3:15-CV-00476-JHM, 2016 WL 1241540, at *3 (W.D. Ky. Mar. 28, 2016) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). Here, because Defendant CHFS has raised Eleventh Amendment sovereign immunity as a threshold defense, the Court shall address it before the merits.

Defendant CHFS is a state entity of the Commonwealth of Kentucky. It is a state created governmental agency of the executive branch. *See* KRS § 12.020(II)(8). Pursuant to KRS §

194A.010, CHFS is the primary state agency for operating the public health, Medicaid, certificate of need and licensure, and mental health and intellectual disability programs in the Commonwealth of Kentucky. CHFS also operates the Department for Community Based Services ("DCBS"), which administers and is responsible for child and adult protection, violence prevention resources, foster care and adoption, permanency, and services to enhance family self-sufficiency, including child care, social services, public assistance, and family support. Ky. Rev. Stat. § 194A.030(8).

"The Eleventh Amendment provides, '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" U.S. Const. amend. XI. The Eleventh Amendment bars all suits, whether for injunctive, declaratory or monetary relief, against the state, its departments, and agencies of the state. *Sefa v. Kentucky*, 510 Fed.Appx. 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)); *see also Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003). "The sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).

Plaintiffs' 42 U.S.C § 1981 claims, KRS Chapter 344 claims, and common law claims against CHFS are barred by the Eleventh Amendment. *See e.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (42 U.S.C. §§ 1981 and 1983 "claims against the [Kentucky] Cabinet [for Health and Family Services] are barred by the Eleventh Amendment to the United States Constitution."); *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) ("Kentucky has

not waived its Eleventh Amendment immunity and Congress has not abrogated state sovereign immunity under sections 1981 and 1983."); *Mosier v. Kentucky*, 640 F.Supp.2d 875, 879 (E.D. Ky. 2009) ("Kentucky has not waived its immunity from suit in federal court for claims under KRS Chapter 344."); *Yanero v. Davis*, 65 S.W.3d 510, 519–20 (Ky.2001) ("[A] state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function."). Accordingly, because it has not waived its immunity from suit for claims under § 1981 or KRS Chapter 344, and it is immune from tort liability for performing a governmental function, these claims against CHFS may not proceed and are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Notwithstanding these decisions, Plaintiffs provide unpersuasive arguments in hopes of sidestepping this precedent. First, Plaintiffs cite *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275 (1959) and *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184 (1964) and suggest that the Supreme Court has utilized the concept of implied consent to defeat immunity from private suit in federal courts. Therefore, even though "courts have not applied the concept of implied consent to § 1981 actions, the *Parden* decision seems to apply to all constitutionally enacted federal statutes which create private causes of action." [DN 21 at 115–16]. Plaintiffs fail to flesh out this argument any further and the Court declines to speculate regarding Plaintiffs' suggestion when the case law is clear—section 1981 claims against a state agency are barred by the Eleventh Amendment. *Lundergan-Grimes*, 784 F.3d at 1046; *see also Ejikeme v. Violet*, 307 F. App'x 944, 951 (6th Cir. 2009). Plaintiffs also argue that, for the sake of fairness and efficiency, the Court should not dismiss the § 1981 claim against CHFS and instead, allow Plaintiffs to proceed to discovery so that they can amend their complaint to include a specific, yet presently unidentified, CHFS official because "personal-capacity actions are allowed against public

officials" and "CHFS will have a duty to defend." [DN 21 at 116]. The Court declines to do so. Plaintiffs have not provided the Court with legal authority demonstrating why the Court should grant them such a delay.

Finally, Plaintiffs point to *Dep't of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000), cited by Defendant, which provides that the Kentucky General Assembly has waived the Commonwealth's immunity for suits arising pursuant to KRS Chapter 344 in state courts. Plaintiffs attempt to use this to argue that if this Court dismisses Plaintiffs' KRS Chapter 344 claims, it "would force Plaintiffs to file a separate action in state court," which would not promote judicial efficiency. [*Id.* at 116]. "Therefore, it is best that none of the Plaintiffs' KRS Chapter 344 actions are dismissed." *Id.* First, Plaintiffs were free to file this action in state court if they wished. Second, in citing this rule, Plaintiffs do not address whether the Commonwealth waived its immunity or consented to suit in federal court under KRS Chapter 344. Plaintiffs provide no other authority to support their position and ignore established precedent—the fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts. *See Wilson v. Kentucky*, 2008 WL 4951774 *1 (E.D. Ky. Nov. 14, 2008); *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985).

Precedent reveals that Plaintiffs' claims under 2 U.S.C § 1981, KRS Chapter 344, and common law torts of negligent infliction of emotional distress, intentional infliction of emotional distress, negligent hiring retention and supervision, and wrongful termination in violation of public policy against CHFS should be dismissed.

**B. Failure to Exhaust Administrative Remedies**

Defendant CHFS next moves to dismiss Plaintiffs' Title VII claim against CHFS pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted based on Plaintiffs'

failure to exhaust administrative remedies and enlarging its Title VII charge beyond its EEOC Complaint. [DN 15 at 68, 74].

In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361 (6th Cir. 2010). Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts. *See* 42 U.S.C. § 2000e–5(e)(1). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

The issue in the instant case is that while the Plaintiffs filed a charge of discrimination with the EEOC against PACS, they failed to file similar charges against CHFS. [*See* Plaintiffs' EEOC Charges DN 15-2 and DN 15-3]. The named party in both complaints is PACS, not CHFS. *See id.* Therefore, CHFS argues that Plaintiffs failed to exhaust their administrative remedies before filing their Title VII claim in federal court; and this failure is a bar to suit against CHFS. [*Id.* at 76–77]. Additionally, CHFS contends that Plaintiffs may not now enlarge their EEOC charge to encompass non-named entities for purposes of this suit. *Id.*

"Filing an EEOC charge against a party is a necessary prerequisite to suit. It is well settled that a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and a party named in the EEOC charge or it has unfairly prevented the filing of an EEOC charge." *Clark v. Teamsters Loc. Union 651*, 349 F.Supp.3d 605, 627–28 (E.D. Ky. 2018) (quoting *Jones v. Truck Drivers Loc. Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984)). The named-party rule serves two goals: "First, the charge serves to notify the defendant of the discrimination claim alleged against him. . . Second, by naming the charged party

and bringing him before the EEOC, that person is able to participate in conciliation efforts directed at securing voluntary compliance with the Act." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 546 (6th Cir. 2013) (quoting *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir.1987)).

Here, the identity of interest exception alone is relevant as Plaintiffs make no assertions that CHFS has, in any way, unfairly prevented the filing of an EEOC charge.

### I. Identity of Interest

The Sixth Circuit has adopted two tests for determining whether the identity of interest exception applies. *Lockhart*, 531 F. App'x at 547 (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 411 (6th Cir. 1999); *Szoke v. United Parcel Serv. Of Am., Inc.*, 398 F. App'x 145, 153–54 (6th Cir. 2010)). Under either test, "a 'clear identity of interest' implies that the named and unnamed parties are virtual alter egos." *See Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1481 (6th Cir. 1990).

Under the first test, from the Seventh Circuit case *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, "an identity of interest exists when the unnamed party possesses sufficient notice of the claim to participate in voluntary conciliation proceedings." *Alexander*, 177 F.3d at 411; *see Eggleston*, 657 F.2d 890, 905 (7th Cir. 1981). The Sixth Circuit has required that the unnamed party have actual notice of the claim. *Szoke*, 398 F. App'x at 154; *see e.g.*, *Alexander*, 177 F.3d at 412 (finding the test satisfied when a local union official against whom plaintiff filed discrimination charges informed the national union and forwarded copies of the charges). "Mere notice of the EEOC investigation . . . is insufficient to satisfy the test." *Szoke*, 398 F. App'x at 154 (quoting *Weatherspoon v. N. Oakland Gen Hosp.*, No. 04-40184, 2006 EL 126615, at *3 (E.D. Mich. Jan. 17, 2006)). The purpose of the Seventh Circuit test is to ensure the unnamed party had the opportunity to settle the claim voluntarily. *See Eggleston*, 657 F.2d at 905.

Plaintiffs do not allege that CHFS received actual notice of the claim. Instead, Plaintiffs state that at the time the EEOC charge of discrimination was filed against PACS, "Plaintiffs did not realize the full involvement of Defendant CHFS." [DN 21 at 118]. Plaintiff Theressa Johnson filed her EEOC charge against PACS on January 14, 2020. [DN 15-2]. Plaintiff Deborah Johnson filed her EEOC charge against PACS on February 24, 2020. [DN 15-3]. However, pointing to attached Exhibits C and D, Plaintiffs contend that CHFS knew about the potential litigation because "on several occasions, Plaintiffs' counsel directly communicated with Defendant's counsel via email in an attempt to gather more information about CHFS's involvement in the termination of Plaintiffs." *Id.*

Exhibit D is an open records request sent to the "Official Custodian of Records" of CHFS on February 13, 2020, for records "including, but not limited to audits, reviews, and employment actions preformed or approved by Charity Roberts, regarding the promotion and demotion of Stephanie Ppoole, the termination of Ms. Theressa E. Johnson, and the termination of Ms. Deborah D. Johnson." [DN 21-4 at 129]. Exhibit C is an email from Plaintiffs' counsel to CHFS legal secretary, Evelyn Miller sent on March 7, 2020. [DN 21-5]. In this email, Plaintiffs' counsel is following up on his open records request and informs Ms. Miller that he "reviewed the contract between CHFS and PACS and confirmed that CHFS was responsible for confirming qualifications of PACS employees and approving hiring decisions." *Id.* at 128. Plaintiffs' counsel also asks Ms. Miller to "either provide the documentation [requested] or confirm that it does not exist." *Id.* Ms. Miller replied explaining "the Central Office does not have or retain any Vendor employee records." *Id.*

In reply, Defendant CHFS notes there is no mention of Theressa or Deborah's EEOC charge or any threat of future litigation in Exhibit C or Exhibit D. [DN 23 at 137]. Defendant

further states that even assuming, *arguendo*, that Exhibit C or D shows that CHFS had actual notice or should have known an EEOC charge was pending against PACS, neither exhibit alleges any wrongdoing on the part of CHFS. *Id.* Upon review of the record, the Court finds that Defendant's observation is correct. [*See generally* DN 21-4; DN 21-5]. In terms of the *Eggleston* test, the record shows that CHFS did not receive adequate notice of the charge under circumstances that would have given CHFS an opportunity to participate in conciliation proceedings. *See Romain*, 836 F.2d at 246.

Under the second test set forth by the Third Circuit in *Glus v. G.C. Murphy Co*., the court looks to four factors to determine the relationship between the named and unnamed parties: (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Lockhart*, 531 F. App'x at 547 (citing *Romain*, 836 F.2d at 246 (alterations omitted)); *see Glus*, 562 F.2d 880, 888 (3rd Cir .1977).

The first factor weighs in favor of Defendant CHFS. As this Circuit explained in *Romain*, "[t]he 'identity of interest' exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Williams v. City of Columbus, Ohio*, 892 F.Supp.2d 918, 926 (S.D. Ohio 2012) (quoting *Romain*,

836 F.2d at 245)). However, in the instant case, Plaintiffs were represented by counsel at the time the EEOC charges were filed. [*See* DN 15-2 (Letter attached to Theressa's EEOC charge from her attorney, Jamir Davis); DN 15-3 (Letter attached to Deborah Johnson's EEOC charge sent from the EEOC office to her attorney, Jamir Davis acknowledging the receipt of the charge)].

Defendant argues that Plaintiffs' assertion that they could not reasonably ascertain CHFS's role or relationship with PACS at the time the EEOC charge was filed is directly contradicted by Plaintiffs' Exhibit C where Plaintiffs' counsel writes " I have reviewed the contract between CHFS and PACS and confirmed that CHFS was responsible for confirming qualifications of PACS employees and approving hiring decisions." [DN 23 at 138; DN 21-4]. Plaintiffs sought CHFS documents regarding the terminations of both Plaintiffs. Thus, Defendant argues, "Plaintiffs knew (1) CHFS provided funding to PACS; (2) CHFS had a contract with PACS; and (3) pursuant to the contract, CHFS was responsible for confirming qualifications of PACS employees." [DN 23 at 138]. Moreover, in the letter attached to Plaintiff Theressa Johnson's EEOC charge, Plaintiffs' counsel writes "[t]he Commonwealth of Kentucky funds PACS through a contract with the Cabinet for Health and Family Services ("CHFS")."[1] [DN 15-2 at 93]. Accordingly, the Court finds that Plaintiffs, represented by counsel, were familiar with the relationship between PACS and CHFS when they filed their EEOC charges on January 14, 2020 and February 24, 2020; and Plaintiffs' counsel could have, though reasonable efforts, ascertained the role of CHFS at the time of filing of the EEOC complaints. *See Romain*, 836 F.2d at 248, fn. 3; *EEOC v. Falls Village Community*, 2007 WL 756803, at *5 (N.D. Ohio Mar. 7, 2007). This first factor weights in Defendant's favor.

---

[1] Though neither party addresses this issue directly in their briefs, the Court notes that the Sixth Circuit determined that merely referring to an unnamed party in the EEOC charge is not sufficient to name that party as a respondent. *See Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480–81 (6th Cir. 1990). As in *Knafel*, the reference to CHFS merely describes the way PACS is funded and does not suffice to name CHFS as a respondent.

Regarding the second factor, the Court finds the interests of CHFS and PACS are not so similar "that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceeding." *See Romain*, 836 F.2d at 245–46. PACS, a non-profit agency, receives federal funding through a contract with CHFS, a state created government agency, to provide Family Preservation/Reunification Programs to Kentucky citizens. [DN 1 at 3; DN 15 at 75; DN 15-1 (Excerpts from Contract, Section 2.0)]. CHFS's Department for Community Based Services ("DCBS") monitors PACS to ensure it complies with state regulations and contractual obligations—which includes ensuring that individuals who perform services possess minimum qualifications and requirements for the work performed and approving employment actions by PACS. [DN 15 at 75; DN 15-1; DN 1 at 3]. In their complaint, Plaintiffs allege that CHFS was notified of Theressa Johnson's second termination in August 2019 as well as Deborah Johnson's termination in October 2019 but did not investigate either matter. [DN 1 at 8, 11]. Plaintiffs further allege that "PACS and CHFS failed to investigate and prevent incidents of racial harassment and age harassment despite being on notice of the pattern and practice of racial and age discrimination and harassment. [*Id.* at 12]. Plaintiffs assert that CHFS approved *all* employment actions by PACS, including multiple employment actions that were unlawful. *Id.*

In its motion to dismiss, Defendant CHFS acknowledges that pursuant to its statutory duties, it entered into a contract with PACS, whereby PACS provides family preservation/reunification programs to Kentucky citizens and receives federal grant money in exchange. [DN 15 at 75]. CHFS contends that "beyond ensuring individuals performing services possess minimum qualifications and requirements for the work performed and approving individuals to perform the work, CHFS has no other involvement in the recruitment, hiring, or

separation of PACS employees." *Id.* CHFS also asserts that PACS employees are not on CHFS payroll, do not receive any state benefits, and may not avail themselves to the Kentucky Personnel Board. [*Id.* at 76]. Thus, CHFS argues that the interests of PACS and CHFS were not similar in terms of either achieving voluntary conciliation with the Plaintiffs during EEOC proceedings or raising certain defenses.

In response, Plaintiffs do not attempt to explain how CHFS and PACS are similar. Instead, Plaintiffs contend that CHFS ultimately assisted PACS in discriminating against Plaintiffs, and as a recipient of federal funds, CHFS has an obligation under Title VII not to discriminate against an individual based on race. [DN 21 at 119]. Plaintiffs argue that the second factor in the *Glus* test is met because "the allegations in the Complaint are serious and in the interest of holding recipients of federal funds accountable to the public it is very important that CHFS be held accountable for its actions." *Id.* How serious an allegation may be is of no consequence to the second factor in the *Glus* test. The second factor requires the Court to consider whether the interests of both CHFS and PACS are so interrelated that it would be unnecessary to name CHFS in the EEOC charge. A "clear identity of interest" implies that PACS and CHFS are virtual alter egos. *See Knafel*, 899 F.2d 1481. However, PACS and CHFS are not alter egos. They are two distinct entities; their relationship is contractual. Naming PACS in the EEOC charge does not suffice to name CHFS.

CHFS's interests and PACS's are different because they operate as separate entities. Additionally, because CHFS did not have the opportunity to participate in conciliation and did not have actual notice of the charge against PACS, it suffered prejudice. *Cf. Alexander*, 177 F.3d at 412 (holding that, when the national union did have actual notice of the pending EEOC charge and therefore could have participated in any conciliation proceedings, the third factor supports finding that an identity of interest exists); *Weatherspoon*, 2006 WL 126615, at *3–4 (separate institutions

with separate interests require separate notice). Therefore, factors two and three weigh in favor of finding there was no identity of interest between PACS and the unnamed party, CHFS.

Finally, as for the fourth factor, CHFS has not contested the fact that it has a contractual, vendor relationship with PACS to provide family support services for the region. Included in this contract is an obligation to ensure PACS is abiding by Kentucky law and regulations (*e.g.*, confirming that certain PACS employees possess minimum qualifications, such as a college or master's degree). [DN 23 at 140]. Plaintiffs allege that CHFS attempted to conceal its involvement in the process of terminating Plaintiffs and did not initially disclose its full relationship with PACS. [DN 21 at 119]. Upon review of the record, the Court finds that CHFS did not hide its role in monitoring PACS to ensure it complies with state regulations and contractual obligations. Despite Plaintiffs' contentions, the Court cannot find that CHFS represented to Plaintiffs that its relationship with Plaintiffs was to be through PACS. As stated above, counsel could have discerned the nature of the relationship between PACS and CHFS, and determined that they are separate entities with different roles regarding the issues in this case that require both PACS and CHFS to be named in Plaintiffs' EEOC charge. The fourth factor of the *Glus* test weighs in favor of finding no identity of interest.

Accordingly, the Court finds that CHFS does not have a sufficient identity of interest for Plaintiffs to circumvent the prerequisite of naming it in the EEOC complaint. Therefore, because Plaintiffs have not met the *Eggleston* test, and because the four factors in the *Glus* test weigh in favor of finding no identity of interest, Plaintiffs' Title VII claims against CHFS should be dismissed for failure to exhaust administrative remedies.

## C. Application for Entry of Default and Insufficient Process

Plaintiffs request that the Clerk enter the default of Defendant CHFS for failure to plead or otherwise defend against this action in a timely manner. [DN 12 at 57]. Plaintiffs contend that they properly served CHFS in this matter on June 9, 2020, and the time for CHFS to appear or otherwise respond to this action expired on July 1, 2020. [*Id.* at 58]. Attached to their request, Plaintiffs included the proof of service signed by Teri Carpenter and Franklin County Sheriff's Deputy Dallas Wills on June 9, 2020. [DN 12-1]. Both parties appear to agree that Plaintiffs delivered a copy of the Complaint and Summons, via personal service through the sheriff's office, to the CHFS principle place of business where it was received and signed by Teri Carpenter, an administrative assistant. [DN 15 at 82; DN 21 at 121]. However, disagreement remains over whether Teri Carpenter was acting as an authorized agent of the Secretary of the Cabinet and was able to accept service of process on behalf of the agency.

### I. Insufficient Service of Process

Defendant CHFS moves for dismissal based on failure of service under Fed. R. Civ. P. 4. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern, Ltd. V. Rudolf Wolf & Co., Ltd.*, 484 U.S. 97, 104 (1987). Pursuant to Fed. R. Civ. P. 12(b)(5), a party may file a motion asserting insufficient service of process as a defense. When service of process is challenged, the plaintiff bears the burden of perfecting service of process and showing that proper service was made. Fed. R. Civ. P. 4(c)(1); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). "[A]ctual knowledge and lack of prejudice cannot take the place of legally sufficient service." *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999); *see also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004).

As pointed out in its motion to dismiss, CHFS is a state entity of the Commonwealth of Kentucky. It is a state-created governmental agency of the executive branch. *See* KRS § 12.020(II)(8). Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure; and to properly serve this agency, a party must comply with Rule 4(j)(2) of the Federal Rules of Civil Procedure. This rule provides that:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> > (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> >
> > (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).

Regarding the first possible method of service set out in Rule 4(j)(2)(A), proper service upon CHFS, a state agency, can be made by delivering a copy of the summons and complaint to CHFS chief executive officer, Secretary Eric Friedlander.[2] Under the federal rule, "[o]nce the officer's identity is determined, the word 'delivering' in Rule 4(j) indicates that personal service should be made upon that particular individual." *Midwest Media Prop., LLC v. City of Fort Wright, Kentucky*, No. CV 2006-25 (WOB), 2006 WL 8445757, at *1 (E.D. Ky. May 19, 2006) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1109 (3d ed. 2005)). "Rule 4(j) does not provide any alternative to delivery upon the chief executive other than service under state law. Thus, service on the chief executive under Rule 4(j) cannot be made by delivering the process at his usual place of abode or where the chief executive usually is found unless this method of service is allowed under state law." § 1109 Service on States, Municipal Corporations,

---

[2] Pursuant to Rule 201, the Court takes judicial notice of the fact that Eric Friedlander is the Secretary and head of CHFS agency.

and Other Governmental Organizations—In General, 4B Fed. Prac. & Proc. Civ. § 1109, fn. 7 (4th ed.). Thus, the Court will look to Kentucky law governing personal service, Ky. R. Civ. P. 4.04(2)—which states:

> Service shall be made upon an individual within this Commonwealth, other than an unmarried infant or person of unsound mind, by delivering a copy of the summons and of the complaint (or other initiating document) *to him personally* or, if acceptance is refused by offering personal delivery to such person, or by delivering a copy of the summons and of the complaint (or other initiating document) *to an agent authorized by appointment or by law to receive service of process for such individual.*

CR 4.04(2) (emphasis added).

Regarding the second possible method of service, set out in Rule 4(j)(2)(B), proper service upon CHFS can be accomplished in the manner prescribed by Kentucky law for serving a summons or like process on such a defendant. Under Kentucky law, service of process "shall be made upon the Commonwealth or any agency thereof by serving the Attorney General or any assistant attorney general" under the corresponding state rule. *See* Ky. R. Civ. P. 4.04(6).

Here, however, Plaintiffs did not attempt service under either applicable state or federal rule. Instead, Plaintiffs delivered a copy of the Complaint and Summons upon Teri Carpenter, an administrative assistant for the CHFS Office of Legal Services, who was located at CHFS's principle place of business. [DN 15-3]. Moreover, the Summons does not name the chief executive officer of CHFS to be served; rather the summons only names "Cabinet for Health and Family Services." [*Id.*] The parties disagree over whether Teri Carpenter was acting as an authorized agent of the Secretary of the Cabinet and was able to accept service of process on behalf of the agency.

Defendant CHFS applies Rule 4(j)(2) and argues that service was improper because Teri Carpenter, an administrative assistant for the CHFS Office of Legal Services, is not an authorized agent by appointment or by law to receive service of process for CHFS. [DN 15 at 83; DN 23 at 142]. *See* CR 4.04(2). Teri Carpenter is also not the chief executive officer of CHFS, nor is she the

process agent (Attorney General or assistant attorney general) for CHFS or its Secretary. [DN 15 at 83]. CHFS asserts that because the case was filed April 27, 2020, pursuant to Rule 4(m), Plaintiffs had until July 26, 2020 to serve CHFS. [DN 15 at 84]. However, Plaintiffs' attempted service upon CHFS was insufficient under Rule 4 and no attempt has been made to rectify the insufficient service of process. [*Id.*] Therefore, CHFS asks the Court to direct the Clerk to not enter a default against it and to dismiss Plaintiffs' claims against it for insufficient process, insufficient service of process, lack of personal jurisdiction due to insufficient process, and for failure to serve within 90 days. Fed. R. Civ. P. 12(b)(2), (4), and (5); Fed. R. Civ. P. 4(m).

In response, Plaintiffs apply Rule 4(e)(2)(C)—which provides that an individual may be served by delivering a copy of the Summons and Complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2)(C). Plaintiffs assert that Teri Carpenter had either actual or apparent authority to accept service on behalf of CHFS's chief executive officer Secretary Eric Freidlander. [DN 21 at 120].

Numerous federal courts have held that service on a secretary, clerk, or other employee of a government entity does not satisfy the requirement that the summons and complaint be "delivered" to its chief executive officer. *See Greenfield v. Brenner*, No. 05-5120-LRS, 2006 WL 776772, at *6 (E.D. Wash. Mar. 23, 2006); *Allison v. Utah Cty. Corp.*, 335 F. Supp.2d 1310, 1313 (D. Utah 2004); *Willey v. Ward*, 197 F. Supp.2d 384, 387 (D. Md. 2002); *Raimondo v. Village of Armada*, 197 F. Supp.2d 833, 838 (E.D. Mich. 2002).

In *Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976), repudiated on other grounds, 818 F.2d 496 (6th Cir. 1987), the Sixth Circuit stated that service on the secretary to the city clerk would not be effective service on the City pursuant to the federal rule, which requires that the chief executive officer be served. *Id.* at 558. However, because the applicable Michigan rule permitted

service by leaving a copy of the summons and complaint with a "person in charge of the office,"
the court found service under the alternative state method to be sufficient. *Id.* The facts of the
instant case are distinguishable from *Amen*. Here, unlike the state rule in *Amen*, the applicable
Kentucky rule permits service by delivering a copy of the summons and complaint to Secretary
Friedlander personally, or by delivering a copy of the summons and complaint **to an agent
authorized by appointment or by law to receive service of process for such individual**. *See* CR
4.04(2).

Plaintiffs have provided evidence of proof of service, in the form of an affidavit signed by
the Sheriff's Deputy and Teri Carpenter who accepted service of process and held herself out as
having authority to do so. [*See* DN 22 (Proof of Service)]. Thus, Plaintiffs argue that service was
proper pursuant to Rule 4(e)(2)(C) because Teri Carpenter had "apparent authority" to do so. [DN
21 at 121]. Plaintiffs further state that the reassurance given by CHFS to the process server,
Franklin County Sheriff's Deputy, "created an environment in which the expectation was that the
Office for Legal Services would accept service on [Secretary Friedlander's] behalf." *Id.* Plaintiffs
misinterpret this doctrine of agency law. Not only is Teri Carpenter not an agent authorized by
appointment or by law to receive service of process for Secretary Friedlander on behalf of CHFS,
no apparent authority exists in this case.

"Apparent authority . . . is created by a person's manifestation that another has authority to
act with legal consequences for the person who makes the manifestation, when a third party
reasonably believes the actor to be authorized and the belief is traceable to the manifestation."
*Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co*., 434 S.W.3d 489, 499 (Ky. 2014)
(citing Restatement (Third) of Agency § 3.03 (2006)). Accordingly, apparent authority is
established where (1) the principal represents that the agents have the authority to act on its behalf;

(2) the third party reasonably believes the agents have such authority; and (3) the third party's belief is traceable to the principal's representations. *Id.* at 500. While "apparent authority is a legal conclusion, its elements are chiefly factual matters." *Orchard Group, Inc. v. Konica Med. Copr.*, 135 F.3d 421, 426 n. 1 (6th Cir. 1998). When apparent authority is at issue, the court must look not to the purported agent's manifestations, but to the principal's manifestations that the purported agent had authority to act on his behalf. *Muncy v. Intercloud Sys., Inc.*, No. CV 14-111-DLB-REW, 2016 WL 6471452, at *3 (E.D. Ky. Nov. 1, 2016) (citing *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012)). An agent cannot rely solely upon his or her own statements to create an apparent agency relationship. Rather, the actions of the principal, as perceived by the party seeking to rely on the agency, are what establish apparent authority. *See Mt. Holly Nursing Center v. Crowdis*, 281 S.W.3d 809, 813 (Ky. App. 2008) (discussing apparent authority).

Apparent authority is created by the principal's representations to a third party. An agent cannot create apparent authority by her own actions or representations. *See DeFranco v. Shaker Square*, 158 Ohio App.3d 105, 814 N.E.2d 93 (Ohio Ct.App.2004) (alleged agent did not have apparent authority where the principal never made representations to the process serve to induce him to rely on the agent's authority to accept service); *Logsdon v. ABCO Constr. Co.*, 103 Ohio App. 233, 241–242, 141 N.E.2d 216, 223 (1956) (apparent authority can never be derived from the acts of the agent alone). Additionally, the process server's subjective belief is insufficient to establish apparent authority. *Whisman v. Robbins*, 712 F.Supp. 632, 636 (S.D. Ohio 1988).

Here, no apparent authority exists because there is no evidence that CHFS gave the process server (or Plaintiffs) any reason to believe that Teri Carpenter was an agent authorized by appointment or by law to receive service of process. Furthermore, because the process server's subjective belief to the contrary is insufficient to establish apparent authority, it does not matter

that the Sheriff's Deputy believed Teri had authority to receive service based on the fact that upon his arrival he was directed to take the summons and complaint to the office of legal services. Apparent authority can never be derived by the acts of the agent alone. There is nothing in the record to suggest that Secretary Friedlander made representations to the process server or to Plaintiffs to induce them to rely on Teri's representation that she had the authority to accept service. Thus, under these authorities, Plaintiffs' service on Teri Carpenter, an administrative assistant for the CHFS Office of Legal Services, rather than on Secretary Friedlander himself, is insufficient to accomplish service on CHFS pursuant to the federal rule.

Moreover, although Plaintiffs argue that CHFS has had actual notice of this lawsuit, it is well-established that such notice may not substitute for proper service. *Midwest Media Prop., LLC v. City of Fort Wright, Kentucky*, No. CV 2006-25 (WOB), 2006 WL 8445757, at *1 (E.D. Ky. May 19, 2006); *See, e.g., Way v. Mueller Brass Co*., 840 F.2d 303, 306 (5th Cir. 1988).

According to Rule 4(m),

If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The 90-day period expired on July 26, 2020, and the record reveals that Plaintiffs have made no further attempts to serve CHFS. Generally, the Court would provide Plaintiffs with an opportunity to show cause for their failure to comply with the 90-day service requirement. However, the Court declines to do so in this case because, as discussed above, the Court finds that all nine of Plaintiffs' claims against CHFS should be dismissed under either Rule 12(b)(1) for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity,

or under Rule 12(b)(6) for failure to state a claim for which relief can be granted based on Plaintiffs' failure to exhaust administrative remedies.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED**: Plaintiffs' Motion for Entry of Default Judgment against Defendant Cabinet for Health and Family Services ("CHFS"), [DN 12], is **DENIED**; and Defendant Cabinet for Health and Family Service's Motion to Dismiss for Failure to State a Claim or alternatively, Motion to Dismiss for Lack of Jurisdiction, [DN 15], is **GRANTED**.

It is further **ORDERED** that all nine claims against Defendant CHFS are dismissed, and Defendant CHFS is terminated as a party. The Clerk is hereby directed to terminate CHFS from this action.

The remaining Defendants in this matter are Pennyrile Allied Community Services, Roy Brunner, and Does 1–50, individually and in official capacities. The facts presented by each Plaintiff are unique such that separate trial dates are necessary, will be bifurcated and remain as set.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 10, 2021

CC: Counsel of Record